UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN ARLEN STANLEY, | |
| Petitioner, | Case No. C14-1689-JLR-MAT |
| v. | |
| PATRICK GLEBE, | REPORT AND RECOMMENDATION |
| Respondent. | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner John Stanley is a state prisoner who is currently confined at the Stafford Creek Corrections Center in Aberdeen, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2010 King County Superior Court judgment and sentence. Respondent has filed an answer responding to petitioner's federal habeas claim and has submitted relevant portions of the state court record. This Court, having carefully reviewed petitioner's claim, respondent's response thereto, and the state court record, concludes that petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

FACTUAL HISTORY

In the early morning hours of May 28, 2010, Abdiqahar Adan was dropped off a few

REPORT AND RECOMMENDATION
PAGE - 1

blocks from his home in the Central Area of Seattle after spending an evening with friends in North Seattle. (Dkt. 12, Ex. 2 at 151-52.) As Mr. Adan walked home, he passed two men on the sidewalk, one of whom he later identified as petitioner John Stanley. (*Id*., Ex. 2 at 155-56.) Immediately after Mr. Adan passed them, the two men caught up with Mr. Adan at which point petitioner grabbed Mr. Adan from behind, placed him in a choke hold, and took him to the ground. (*Id*., Ex. 2 at 157-58.) Petitioner put an unknown object to Mr. Adan's head and threatened to shoot him in the face. (*Id*., Ex. 2 at 158, 173.) As Mr. Adan struggled, the men punched him repeatedly. (*See id*., Ex. 2 at 158-59, 176-77.)

Mr. Adan told the men they could take everything he had, but Mr.Adan had only $20 in his pocket. (*Id*., Ex. 2 at 158.) When Mr. Adan took the money out to give to them, the second man told Mr. Adan they wanted "everything" from him. (*Id*., Ex. 2 at 158.) The second man searched Mr. Adan's pockets while petitioner held him down and he took Mr. Adan's debit card, cell phone, student ID, and the $20. (*See id*., Ex. 2 at 160, 163-64, 177-78.) Mr. Adan refused demands to give the men the PIN number for his debit card. (*Id*., Ex. 2 at 161.) He also refused demands to take off his jacket, and Mr. Adan ultimately demanded that the two men return everything they had taken from him. (*See id*., Ex. 2 at 160-61.) The two men then fled. (*Id*., Ex. 2 at 161-62.)

As petitioner and the other man walked away, Mr. Adan heard a phone ringing, saw a cell phone on the ground, and picked it up. (*Id*., Ex. 2 at 162-3.) Mr. Adan taunted the robbers, yelling "I have your cell phone." (*Id*., Ex. 2 at 165.) Mr. Adan began walking to a nearby AM/PM market when he saw petitioner running towards him. (*Id*., Ex. 2 at 162-64.) Mr. Adan ran straight to the clerk at the AM/PM, told the clerk he had been assaulted and needed help, and asked the clerk to call 911, which the clerk did. (Dkt. 12, Ex. 2 at 164.) Petitioner entered the

REPORT AND RECOMMENDATION
PAGE - 2

store as well and offered Mr. Adan money to return the cell phone he had picked up, but Mr. Adan refused. (*Id*., Ex, 2 at 167-68.)  The police arrived while both Mr. Adan and petitioner were still in the store, and petitioner was arrested. (*Id*., Ex. 1 at 48-50, 77.)  Officers conducted a search of petitioner incident to his arrest and discovered that he was in possession of crack cocaine. (*See id*., Ex. 1 at 51-52, 63-64, 78-79, 86.)

On August 10, 2010, while petitioner was in pretrial custody at the King County Jail, Corrections Officer Chang An saw petitioner, who was in his cell, hand a note to another inmate, Anthony Terry, who was standing in the dayroom of petitioner's housing unit. (*Id*., Ex. 2 at 99-102.)  Shortly thereafter, inmate Terry handed the note to another inmate who was about to be released from custody, inmate Earl Barrington. (*Id*., Ex. 2 at 103-04.)  Corrections Officer An retrieved the note from inmate Barrington. (*Id*., Ex. 2 at 106.)  The note indicated that it was from "Doelow," which is one of petitioner's nicknames. (*See id*., Ex. 1 at 109-13, Ex. 2 at 122-26, and Ex. 33.)  The note contained a telephone number next to the name "Abdi," and it indicated that Abdi should be contacted and offered payment to not participate in the trial." (*Id*., Ex. 33.)  Mr. Adan confirmed at trial that his nickname is "Abdi" and that the telephone number listed on the note was his home phone number. (*Id*., Ex. 2 at 149, 181.)

On September 3, 2010, following a jury trial, petitioner was convicted on charges of first degree robbery, possession of cocaine, and attempted bribery of a witness. (*Id*., Ex. 4.)  Petitioner was sentenced on November 5, 2010 to a total term of 144 months confinement. (*Id*.)

## PROCEDURAL HISTORY

Petitioner appealed his convictions and sentence to the Washington Court of Appeals. (*See* Dkt. 12, Exs. 5 and 10.)  In the opening brief prepared by petitioner's appellate counsel, petitioner asserted that (1) the judgment had misstated his offender score and standard ranges,

REPORT AND RECOMMENDATION
PAGE - 3

and (2) the sentencing court miscalculated petitioner's offender score and standard range on his conviction for attempted bribery. (*Id*., Ex. 5 at 1.)  The state conceded these errors. (*Id*., Ex. 6.)

Petitioner also filed a pro se statement of additional grounds for review in which he asserted that (1) a police officer's testimony was inconsistent with an earlier report regarding her contact with petitioner, (2) John Collins was not called as a defense witness, (3) inmates Anthony Terry and Earl Barrington were subpoenaed to come to court but never appeared thus violating petitioner's right to confront his accusers, and (4) the victim testified only that he "believe[d]" petitioner was the perpetrator and he also failed to tell the court that he gave two different descriptions of the alleged perpetrator. (*Id*., Ex. 10 at 1-2.)

On January 30, 2012, the Court of Appeals issued an unpublished opinion in which it accepted the state's concession of error regarding the sentencing issues, rejected petitioner's pro se grounds for review, and remanded for resentencing. (*Id*., Ex. 11.)  Petitioner did not seek further review by the Washington Supreme Court, and the Court of Appeals issued its mandate terminating direct review on March 9, 2012. (*Id*., Ex. 12.)

On November 6, 2012, petitioner filed a personal restraint petition in the Washington Court of Appeals in which he asserted that his trial counsel's performance was deficient in various respects. (*Id*., Ex. 13.)  The Court of Appeals construed petitioner's petition as alleging the following deficiencies in counsel's conduct:  (1) counsel failed to call witnesses; (2) counsel failed to call Anthony Terry despite the fact that the court had issued a subpoena; (3) counsel failed to obtain a handwriting expert as petitioner had requested; (4) counsel failed to hire an investigator; (5) counsel failed to interview the store clerk to determine whether other people were in the store at the time of the crime; (6) counsel failed to discover relevant case law; (7) counsel failed to sufficiently cross-exam the victim regarding differences between his original

REPORT AND RECOMMENDATION
PAGE - 4

physical description of the assailant and petitioner's physical appearance; and, (8) counsel failed to fully investigate the case. (Dkt. 12, Ex. 14.) On April 22, 2013, the Acting Chief Judge of the Court of Appeals issued an order dismissing petitioner's personal restraint petition. (*Id*., Dkt. 14.)

Petitioner sought further review of his ineffective assistance of counsel claim by the Washington Supreme Court. (*Id*., Ex. 17.) Petitioner identified the following instances of deficient performance in his motion for discretionary review: (1) counsel failed to call Anthony Terry as a witness; (2) counsel failed to obtain the services of an investigator and handwriting expert; (3) counsel failed to investigate/interview the store clerk who called 911 and other potential witnesses who were in the store at the same time petitioner and Mr. Adan were there; (4) counsel failed to discover relevant case law; (5) counsel failed to adequately cross-examine Mr. Adan regarding discrepancies between his original description of the robber to the police and petitioner's actual appearance. (*Id*., Ex. 17 at 13-15.)

On January 3, 2014, the Acting Commissioner of the Supreme Court issued a ruling denying review. (*Id*., Ex. 23.) A subsequent motion to modify the Commissioner's ruling was likewise denied. (*Id*., Exs. 28 and 31.) The Washington Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on August 27, 2014. Petitioner now seeks federal habeas review of his convictions.

## GROUNDS FOR RELIEF

Petitioner identifies a single ground for relief in his federal habeas petition in which he asserts that he was denied his Sixth Amendment right to effective assistance of counsel. (Dkt. 4 at 5.) Though petitioner does not identify specific instances of ineffective assistance in his petition, his intention appears to be to assert the same ineffective assistance claims in these

REPORT AND RECOMMENDATION
PAGE - 5

proceedings as were presented in his state court proceedings. (*See id.*) Accordingly, this Court construes petitioner's federal habeas petition as asserting the same deficiencies in counsel's performance as were asserted in petitioner's motion for discretionary review to the Washington Supreme Court in his motion for discretionary review. (*See* Dkt. 12, Ex. 17 at 12-15.)

## DISCUSSION

Respondent concedes in his answer that petitioner has properly exhausted his ineffective assistance of counsel claim. Respondent argues, however, that petitioner is not entitled to relief in these proceedings because the state courts adjudicated the claim on the merits and properly rejected petitioner's challenge to trial counsel's effectiveness.

### Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 407-09. "The 'unreasonable application' clause requires the state court decision to be more than

REPORT AND RECOMMENDATION
PAGE - 6

incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). A state court's decision may be overturned only if the application is "objectively unreasonable." *Id*.

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id*. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398-1400, 1415. If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

<p align="center">Ineffective Assistance of Counsel</p>

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney

REPORT AND RECOMMENDATION
PAGE - 7

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.

Petitioner asserts that his trial counsel's performance was deficient in the following respects: (1) he failed to call Anthony Terry as a witness; (2) he failed to obtain the services of an investigator and handwriting expert; (3) he failed to investigate/interview the store clerk who

REPORT AND RECOMMENDATION
PAGE - 8

called 911 and other potential witnesses who were in the store at the same time petitioner and Mr. Adan were there; (4) he failed to discover relevant case law; (5) he failed to adequately cross-examine Mr. Adan regarding discrepancies between his original description of the robber to the police and petitioner's actual appearance. (*See* Dkt. 12, Ex. 17 at 12-15.)

The Washington Court of Appeals rejected petitioner's challenges to his counsel's performance because petitioner failed to submit any meaningful evidence to support his assertions and he failed to articulate or establish any actual prejudice resulting from counsel's alleged deficiencies. (*Id.*, Ex. 14.)

The Washington Supreme Court also rejected petitioner's ineffective assistance of counsel claims, explaining its conclusion as follows:

> Mr. Stanley argues that his trial attorney was ineffective. In order to prevail on this claim, Mr. Stanley must show that his counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the outcome of the proceedings would have been different. *In re Det. of Stout*, 159 Wn.2d 357, 377, 150 P.3d 86 (2007). Mr. Stanley first contends that defense counsel was ineffective for failing to call Anthony Terry to testify. But Mr. Stanley does not provide a declaration from Mr. Terry or any other evidence showing that he would have provided favorable testimony. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992) (personal restraint petitioner's allegations based on matters outside of record must be supported by competent, admissible evidence). He therefore fails to show that his attorney's failure to secure Mr. Terry's testimony probably would have affected the outcome. Mr. Stanley also argues that his attorney should have hired a handwriting expert to rebut evidence that Mr. Stanley had written a note attempting to bribe a witness, and that counsel should have hired an investigator to pursue other potential witnesses. But, again, Mr. Stanley provides no evidence that a handwriting expert would have testified that someone else wrote the note or that further investigation would have been fruitful. Since Mr. Stanley fails to show either unprofessional error or prejudice, his ineffective assistance claims fail.

(Dkt. 12, Ex. 23.)

Petitioner fails to demonstrate that the state courts' decisions with respect to his

REPORT AND RECOMMENDATION
PAGE - 9

ineffective assistance of counsel claims are contrary to, or constitute an unreasonable application of, clearly established federal law. With respect to potential defense witness Anthony Terry, petitioner fails to even suggest what testimony Mr. Terry would have provided, much less demonstrate that such testimony would have altered the outcome of the trial. The state courts reasonably rejected this portion of petitioner's ineffective assistance of counsel claim.

With respect to the handwriting expert whom petitioner asserts should have been retained by counsel in order to demonstrate that petitioner did not write the note which served as the basis of the bribery charge, petitioner presents no evidence that the note was, in fact, written by someone else. Moreover, as the trial court noted in its pretrial discussion with counsel regarding the bribery charge, "[i]t may or may not be in his handwriting, but whether or not it's in his handwriting is not dispositive, if he is the source. If he is in a cell with a second person, and it came out of his cell, whether or not he wrote it, is not dispositive of whether he was behind it." (Dkt. 12, Ex. 1 at 14.) Nothing in the record suggests that petitioner was in any way prejudiced by counsels' failure to retain the services of a handwriting expert and, thus, the state courts reasonably rejected this claim.

With respect to petitioner's claim that trial counsel failed to investigate and/or interview the store clerk who called 911 and other individuals who may have been in the AM/PM market at the same time as petitioner and Mr. Adan, petitioner again fails to even suggest what he believes a more thorough investigation of these individuals would have revealed. The crime itself did not occur in the AM/PM and the clerk's only apparent involvement in the incident was that to call 911 at Mr. Adan's request. The only other thing that apparently transpired while petitioner and Mr. Adan were in the AM/PM that the clerk or customers may have observed was that petitioner offered Mr. Adan money for the return of his cell phone which Mr. Adan had

REPORT AND RECOMMENDATION
PAGE - 10

found at the scene of the assault.  Nothing in the record suggests that any testimony from the clerk, or others in the AM/PM on the night in question, would have been favorable to petitioner or, in any event, would have altered the outcome of the trial.  Thus, the state courts reasonably rejected this portion of petitioner's ineffective assistance claim as well.

With respect to petitioner's claim that his trial counsel failed to discover relevant case law, a review of petitioner's motion for discretionary review suggests that this claim pertains to an exchange between petitioner's counsel and the trial court as petitioner's counsel argued for severance of the bribery charge from the underlying robbery charge.  (*See* Dkt. 12, Ex. 17 at 13-14 and Ex. 1 at 5-12.)  During this exchange, petitioner's counsel essentially conceded that he had found no case law to support his position.  (*See id.*, Ex. 1 at 11-12.)  In order to prevail on his claim that counsel failed to discover relevant case law petitioner would have to, at the very least, identify the relevant case law that he believes counsel should have found.  Petitioner made no effort to do so in the state courts and he makes no such effort here.  The state courts reasonably rejected this portion of petitioner's ineffective assistance of counsel claim.

Finally, with respect to petitioner's claim that counsel failed to adequately cross-examine Mr. Adan regarding discrepancies between the physical description of the perpetrator which Mr. Adan gave police and petitioner's actual physical appearance, the record makes clear that Mr. Adan never gave the police a description of petitioner.  Petitioner provided police with a physical description of the second suspect who was at large, but it was unnecessary for him to provide police with a description of petitioner because and Mr. Adan were both in the store together at the time the police arrived.  (*See* Dkt. 12, Ex. 1 at 147-48.)  As Mr. Adan never provided a description of petitioner to police, there would have been no reason for counsel to cross-examine Mr. Adan on this point.  The state courts therefore reasonably rejected this final portion of

REPORT AND RECOMMENDATION
PAGE - 11

petitioner's ineffective assistance of counsel claim.

As the record before this Court makes clear that the state courts reasonably rejected the entirety of petitioner's ineffective assistance of counsel claim, petitioner's federal habeas petition should be denied.

## Certificate of Apealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability in this matter.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect

your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 13, 2015**.

DATED this 22nd day of January, 2015.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13